UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| JACQUELYN D. GOODHART, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 4:08-cv-82-AS-APR |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jacquelyn D. Goodhart ("Ms. Goodhart"), now proceeding *pro se*, seeks judicial review of her denial of benefits under the Social Security Act ("the Act"). The Commissioner of Social Security found that Ms. Goodhart was not entitled to a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(I), 423, nor Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Goodhart was previously denied benefits on June 25, 2002, after alleging a disability onset date of March 1, 2000. Ms. Goodhart again applied for a period of disability, DIB, and SSI on March 19, 2003, claiming a disability onset date of December 31, 2002 due to thrombocytosis (high blood platelet count). Her insured status for DIB expired on September 30, 2006. Ms. Goodhart's applications were denied throughout the administrative process, and on January 12, 2007, following a September 23, 2005 hearing, and a supplemental hearing which was held on September 22, 2006, the Administrative Law Judge Melvin B. Werner ("ALJ Werner") determined that Ms. Goodhart was not disabled.[1] Ms. Goodhart filed a request for

---

[1] The Court takes judicial notice of the September 23, 2005 administrative hearing in which Ms. Goodhart appeared and testified with the assistance of her attorney, Rhonda Sullivan.

review which was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner.

Ms. Goodhart filed her Complaint on October 29, 2008, contending that the decision by ALJ Werner is not supported by substantial evidence and is contrary to law because over the past twelve months she has had erratic platelet counts which has caused increased swelling in the upper and lower extremities; and, while she "had only mild" restrictions in activities of daily living, difficulty in maintaining social functioning, and difficulty in maintaining concentration, persistence, or pace, "currently she experiences increased difficulty in all of the above." Brief in Support of the Complaint, p. 2.

Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I. FACTUAL BACKGROUND[2]

Physical Impairments

Michael W. Cannon, M.D., saw Ms. Goodhart for complaints of pain in her arms and legs. (Tr. 615-25). On January 29, 2003, Dr. Cannon indicated that her hands were "really doing pretty good, no recent infections" and noted that Ms. Goodhart had good capillary filling in all of her fingers. On May 19, 2003, Dr. Cannon saw Ms. Goodhart and noted that her hands "look good," and she had good circulation and no ulcerations. In June 2003, Dr. Cannon saw Ms.

---

The hearing also included testimony from vocational expert, Cynthia Younger, a rehabilitation consultant. Interrogatory responses from the medical expert, Dr. Anne Winkler, were made apart of the record pursuant to the September 22, 2006 supplemental hearing.

[2] Despite Ms. Goodhart's burden to show that she was disabled as defined by the Act, she did not identify any portion of the record revealing testimony or relevant medical evidence supporting her position. Aside, this Court has reviewed the record and incorporates the Commissioner's version of the relevant medical evidence, as discussed by the ALJ and set forth herein. *See* Response Brief, pp. 2-3.

Goodhart for complaints of numbness, tingling, and pain in her fingers and toes. On examination, Dr. Cannon noted good circulation and no ulcers or signs of infection, but he increased her medication. On August 15, 2003, Dr. Cannon indicated that she was "doing fairly well," and on examination, he noted good circulation and no active ulcers in the fingers, and noted that blood tests were "absolutely normal including her platelet count." In September and October 2003, Dr. Cannon noted that Ms. Goodhart's circulation was "doing pretty well" and that there were no abnormalities with respect to her fingers. In March 2004, Dr. Cannon again noted that Ms. Goodhart was doing fairly well, her circulation was pretty good, and her last blood count was acceptable. In May 2004, Dr. Cannon noted that Ms. Goodhart's circulation in her fingers looked normal.

In February 2004, W. Williamson, D.O., a state agency physician, reviewed the record and concluded that Ms. Goodhart could lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday (Tr. 679-86). Dr. Williamson included a discussion of Dr. Cannon's findings.

Anne Winkler, M.D., reviewed the entire record and concluded that Ms. Goodhart exhibited drug abuse and had thrombocytosis (Tr. 964). She indicated that her platelets were well controlled and in the normal range most of the time, and that Ms. Goodhart should be asymptomatic. Dr. Winkler concluded that Ms. Goodhart had no limitations with lifting, carrying, sitting, standing, walking, pushing, and pulling, and that she had limited ability for fingering.

Mental Impairments

Robert W. Barnett, Ph.D., examined Ms. Goodhart on January 15, 2004 for complaints of panic disorder and physical problems (Tr. 606-10). Ms. Goodhart lived with her three children

and sick mother, provided care for her mother, and did some housekeeping tasks. On mental status examination, Dr. Barnett indicated that Ms. Goodhart presented as functioning in the low average range and was agitated and tearful on several occasions. He diagnosed Ms. Goodhart with anxiety disorder and opined that she showed no cognitive difficulties with attention that would prevent her from working, and that she had only mild concentration problems due to her anxiety. He indicated that Ms. Goodhart could do simple work tasks and would probably be capable of doing complex work tasks if she reduced her levels of anxiety.

On January 29, 2004, Lauren Cohen, Ph.D., a state agency psychologist, reviewed the record and concluded that Ms. Goodhart had no severe mental impairment (Tr. 662-78).

Based on the record, the ALJ concluded that Ms. Goodhart was not disabled.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one. Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In making a substantial evidence determination, the court will review the record as a whole, but will not reconsider the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *William v. Apfel*, 179 F.3d 1066, 1071-72 (7th Cir. 1999). That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). Thus, if reasonable minds could disagree on whether an individual is disabled, the court must affirm the Commissioner's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). However,

4

the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## III. DISCUSSION

Generally, "[b]enefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant bears the burden of showing, through testimony and medical evidence supported by clinical data and laboratory diagnosis, that she was disabled during the period in which she was insured. *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976) (citing *Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971)). Furthermore, the claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

1. Whether the claimant is currently employed;
2. Whether the claimant has a severe impairment;
3. Whether the claimant's impairment meets or equals one listed by the Secretary;
4. Whether the claimant can perform her past work; and
5. Whether the claimant is capable of performing any work in the national economy.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520). The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Bolinger v. Barnhart*, 446 F.Supp.2d 950, 955 (N.D.Ind. 2006).

In following the aforementioned sequence, ALJ Werner concluded as follows: Ms. Goodhart met the insured status requirements of the Act through September 30, 2006; she has not engaged in substantial gainful activity since December 31, 2002, the alleged onset date; she has severe impairments of a chronic blood condition in remission and medically maintained, Raynaud's phenomena, and prescription narcotic abuse, and a non-severe depressive disorder; her impairments, including the substance use disorder, meet section 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing(s)"); if she stopped the substance abuse, the remaining physical limitations would cause more than a minimal impact on her ability to perform basic work activities and therefore she would continue to have a severe impairment or combination of impairments; if she stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments in the Listings, and she would have the residual functional capacity ("RFC") to perform work which requires lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, sitting up to 5 to 6 hours of an 8-hour workday, and standing or walking up to 5 to 6 hours of an 8-hour workday, yet she is restricted from continuous arm movements involving hard grasping (such as those required to operate controls or levers), restricted from use of foot controls, and must avoid exposure to temperature extremes, but she has no limitations in mental functioning; and finally, if Ms. Goodhart stopped the substance use, she would be able to perform her past relevant work as a short order cook, since the work does not require the performance of work-related activities precluded by the RFC which Ms. Goodhart would have if she stopped the substance use.

ALJ Werner concluded that because Ms. Goodhart would not be disabled if she stopped the substance use, the use disorder is a contributing factor material to the determination of

disability, and therefore she has not been disabled within the meaning of the Act during the relevant time frame.

Here, liberally construing the Complaint, Ms. Goodhart argues that her severe chronic blood condition, thrombocytosis, causes her to be disabled, and apparently she argues that her "increased difficulty" with activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, cause her to be disabled. Ms. Goodhart requests that the Court reverse the decision of the ALJ and award benefits, or remand the case for a fair hearing.

Ms. Goodhart's contentions are without merit because, aside from the opinion testimony by Ms. Goodhart and her friend, which was discredited by the ALJ, the record evidence establishes that Ms. Goodhart is not disabled. Going beyond the allegations in the Complaint, in an attempt to handle this *pro se* proceeding with care, the Court also finds that the substantial evidence supports Ms. Goodhart's having the capacity to perform her past work as a short order cook.

**(1)** **Severity of Impairments**

The ALJ found that Ms. Goodhart suffered from the severe impairments of chronic blood condition in remission and medically maintained, Raynaud's phenomena, and prescription narcotic abuse, and a non-severe depressive disorder; and, that her impairments met section 12.09 (substance addiction disorders) in the Listings.

Step two is a threshold analysis that requires Ms. Goodhart to show only that she has at least one severe impairment. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments."); *Hickman v. Apfel*, 187

F.3d 683, 688 (7th Cir. 1999) ("[I]t is quite apparent that severity is merely a threshold requirement."). The ALJ did find that Ms. Goodhart had a severe impairment; in fact, he found that she had several severe impairments, and the ALJ properly proceeded to step three in order to determine whether any of Ms. Goodhart's impairments qualified as a listed impairment. Thus, to the extent that Ms. Goodhart claims that she now suffers additional impairments, this matters not, because the ALJ properly considered the limitations posed by Ms. Goodhart's medical problems. *See id.*

**(2)** <u>**Medical Evidence and Testimony**</u>

Despite Ms. Goodhart's testimony that she was unable to work due to pain in her legs, arms, and fingers, and due to fatigue, nausea, sweating, and vomiting resulting from her thrombosis medication, and despite her report of swelling in the ankles and hands, forgetfulness, cloudy thinking, panic attacks, and the inability to sit for long periods— the ALJ determined that Ms. Goodhart's substance abuse was a material factor to the finding of disability,[3] and, pursuant to Public Law No. 104-21 § 105, determined that Ms. Goodhart's impairments would not meet or equal a Listing. The ALJ also found that absent the substance abuse (*see* 42 U.S.C. § 423(d)(2)(C)), Ms. Goodhart retained the capacity to perform her past work as a short order cook. *See* 20 C.F.R. §§ 404.1535, 416.935 (requiring the ALJ to first determine if the claimant is disabled, and then assess what impairments would remain in the absence of substance abuse).

Ms. Goodhart's testimony and the testimony of her friend, Ms. Lott, is the only evidence which supports Ms. Goodhart's position that she is disabled. However, the ALJ, who is in the best position to observe the demeanor and veracity of the testifying witnesses, discredited this

---

[3]  Ms. Goodhart does not argue, nor attempt to demonstrate, that her substance abuse was not material to the finding of a disability.

testimony. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). And, this Court will not disturb the weighing of credibility so long as the determinations are not "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart,* 360 F.3d 751, 758 (7th Cir. 2004), Coffey, J., dissenting).

In finding that Ms. Goodhart's statements were not entirely credible regarding the intensity, persistence, and limiting effects of her symptoms, ALJ Werner gave specific reasons for the finding. *See* 20 C.F.R. § 416.929(c)(3). The ALJ considered Ms. Goodhart's daily activities, which not only included the completion of many household chores, but also included extended lengthy trips, home schooling of her children, and taking care of ailing family members. The ALJ found that Ms. Goodhart's active lifestyle was inconsistent with her complaints and the alleged severity of her pain. The ALJ also noted that Ms. Goodhart was not credible because she failed to tell treating sources that she was obtaining narcotics from other sources, she denied experiencing headaches, fatigue, nausea, vomiting, and weakness to Dr. Cannon, and she failed to report these symptoms to other physicians on a consistent basis after the alleged onset of disability. Additionally, there were no observations of significant upper and lower extremity swelling and infections twice a month, as reported by Ms. Goodhart, and her platelet levels were consistently under good control since the alleged onset of disability.

And although the ALJ found Ms. Lott's statements credible to the extent that they documented Ms. Goodhart's active lifestyle and her ability to concentrate and attend, the ALJ noted that Ms. Lott's testimony as to Ms. Goodhart's pain levels and limitations were not supported by the medical evidence or the activity levels that she described, or that were described by Ms. Goodhart.

Furthermore, ALJ Werner properly considered the medical records and the medical expert's opinion. *See* 20 C.F.R. § 404.1526. ALJ Werner noted that despite Ms. Goodhart's being warned by treating physicians to reduce or stop her narcotic medications, she continued to receive narcotics concurrently from other sources, took the medications in excess of prescribed dosages, requested early refills of narcotic medications, and also reported lost and stolen prescription necessitating extra refills. ALJ Werner relied upon the opinion of the medical expert, Dr. Anne Winkler, who reviewed the entire record and found no significant objective findings, and confirmed that Ms. Goodhart should be asymptomatic as far as thrombocytosis was concerned, and that neither thrombocytosis or Raynaud's phenomenon met or equaled the criteria of any Listing. Dr. Winkler attributed Ms. Goodhart's symptoms to narcotic abuse. While the ALJ relied upon Dr. Winkler's finding that no exertional limitations were recommended for Ms. Goodhart (although noting that she was limited by frequent fingering/fine manipulation and should avoid temperature extremes), the ALJ explicitly relied more heavily on the state agency's findings as to Ms. Goodhart's exertional limitations. The ALJ's determination was further supported by his reliance on Dr. Cannon's reports that Ms. Goodhart was doing well and was able to use her fingers and hands extremely well. Therefore, the record reflects that the ALJ's determinations were supported by the findings of a number of practitioners. As such, the ALJ properly disregarded the claimant's exaggerated assertions of pain and other ailments where he validly found the claimant incredible. *See Prochaska*, 454 F.3d at 738 (citing *Carradine,* 360 F.3d at 753-54)). The ALJ's credibility finding was not patently wrong.

Lastly, the Court holds that the ALJ's finding, that absent Ms. Goodhart's substance abuse, she would have the RFC as prescribed and the ability to perform the job of a short order cook, is supported by substantial evidence. Here, Ms. Goodhart was limited to a light exertional

level and was to avoid strenuous lifting and grasping, use of foot controls, and exposure to cold. The RFC is supported by the medical findings discussed above, and the fact that Ms. Goodhart's limitations were, based on the evidence, found not to be as extensive as she offered. The determination that Ms. Goodhart could work as a short order cook is further supported by the vocational expert's testimony, upon which the ALJ properly relied. Again, this constitutes substantial evidence.

**(3) Subsequent Evidence**

Ms. Goodhart admits that she has had only mild restrictions in activities of daily living and mild difficulty with social functioning and maintaining concentration/persistence/pace, yet Ms. Goodhart suggests that she "currently" experiences increased difficulties in these areas. Ms. Goodhart's contentions are allegedly supported by Dr. DiMartino, whose report was to be submitted after the filing of the Complaint. Brief in Support of the Complaint, p. 2.

Aside from Ms. Goodhart's failure to supply the report, "the law requires that a claimant demonstrate [her] disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971) (citation omitted). Further, "[a]ny condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F.Supp. 651, 654 (N.D. Ind. 1982) (citing *Jeralds*, 445 F.2d at 36).

Ms. Goodhart remained insured only through September 30, 2006, and she has not demonstrated a disability within the proscribed period of eligibility. Further, she is unable to meet the demand required for a remand under sentence six of 42 U.S.C. § 405(g). *See Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) (remand is appropriate upon a showing that there is new evidence which is material and that there is good cause for the failure to present the subject

evidence to the ALJ); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993) ("[P]laintiff must meet the requirements of newness, materiality, and good cause").

ALJ Werner discussed the evidence favoring the denial of benefits, as well as the testimony and evidence that supported Ms. Goodhart's position, and built an accurate and logical bridge from the evidence to his decision denying benefits. Accordingly, the ALJ's finding that Ms. Goodhart was not disabled as defined by the Social Security Act is supported by such relevant evidence as a reasonable mind might accept as adequate to support his conclusion, and the Court will not disturb the ALJ's decision.

Should it be that Ms. Goodhart's condition has worsened, she is not prohibited from filing a new application for benefits.

## IV. CONCLUSION

The purpose of this Court's review of the ALJ's decision is to ensure that it is supported by substantial evidence. Therefore, given that ALJ Werner's decision was supported by substantial evidence, the decision of the Commissioner is **AFFIRMED.**

**SO ORDERED**.

**DATED: July 6, 2009**

                                            /s/ ALLEN SHARP
                                       **ALLEN SHARP, JUDGE**
                                       **UNITED STATES DISTRICT COURT**